UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA CHRISTINE FRY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 1:16-cv-00405-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Sara Christine Fry ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2] Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial

---

[1]　Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action.
[2]　The parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings in this case, including entry of final judgment. (Docs. 5, 7).

1

evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

On February 27, 2013, Plaintiff filed her current application for supplemental security income, alleging disability beginning on June 25, 2006. AR 153-158.[3] Plaintiff's application was denied initially and on reconsideration. AR 94-97, 99-103. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 105-107. Plaintiff testified at a hearing before ALJ Christine Hilleren and the ALJ issued an order denying benefits on August 25, 2015. AR 18-36. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied on January 14, 2016, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on June 29, 2015, in Fresno, California. AR 37-69. Plaintiff appeared and was represented by attorney Rachel Mahoney. AR 39. Impartial Vocational Expert Judith Najarian also appeared and testified. AR 37, 65-68.

Plaintiff was born on November 8, 1990, and was 24 years old at the time of the hearing. AR 43. Plaintiff has some college education but she was unable to graduate due to her impairments. AR 42, 45. Plaintiff has never held substantial gainful employment. AR 44. She lives with her mother for less than two months out of the year and spends the rest of her time camping or staying with friends. AR 43.

With respect to her impairments, Plaintiff testified that in 2006, she suffered a concussion during a water polo match when she was sixteen years old. AR 42, 473. She hit her head on the side of the pool and was later diagnosed with a traumatic brain injury. AR 42, 1047-1055. As a result of her injury and related neurological issues, Plaintiff testified she experiences seizures, extreme fatigue, pain, and other cognitive difficulties. AR 42. Plaintiff further testified that she suffers from stabbing pains, pain in her ears, and blurry vision. AR 45-46. She experiences these symptoms intermittently, but they regularly occur approximately fifteen times per month. AR 47.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff also testified about her experiences with seizures. AR 49. At the time of the hearing, Plaintiff had not had a seizure for over four months. AR 49. Plaintiff testified that prior to this time she was experiencing seizures almost daily. AR 49-50. Plaintiff described the onset of her seizures, explaining that she first feels numbness in her hands that later travels to her face. AR 50. She generally vomits, loses her balance, becomes disoriented, and then smells fire. AR 50. Plaintiff testified that after these seizures she experiences memory loss ranging from a period of six hours to two days. AR 50-51.

When asked about her current medications, Plaintiff testified that she has been on Growth Hormone ("GH") therapy which has significantly improved her symptoms, but that she still experiences vomiting and dizziness approximately seven or eight times a month. AR 45-49. Plaintiff also takes Hydrocodone for menstrual pain. AR 51.

With respect to her daily activities, Plaintiff testified about her extensive experience with long distance hiking. AR 52. In July 2014, Plaintiff went on a "five-month" cross country-hike. AR 55. Because of her symptoms, Plaintiff was not able to complete all segments of the hike; she completed only 2,100 miles. AR 56. Plaintiff regularly lifts thirty pounds, and she regularly hikes carrying a seventeen pound backpack. AR 51-52. If feeling well, Plaintiff stated she could be on her feet the entire day, and she could sit for hours without needing to stand. AR 52. As for her symptoms while hiking, Plaintiff testified that she handles her symptoms much better in secluded outdoor areas. Plaintiff stated that her symptoms occur at the same frequency while she is hiking, and when her symptoms become debilitating she lays down in her tent until she has recovered. AR 51-53. Two weeks before the hearing, Plaintiff stated that she went on a three day forty-four mile hike. AR 57. Plaintiff testified that on average, it takes her one to two days of mostly sleeping, before she feels energized enough to begin another hike. AR 57.

In response to questions from her attorney, Plaintiff testified that since her accident in 2006 she has had a constant headache that often escalates into migraines. AR 58. Although she has tried over 50 different medications, no medication has alleviated or helped ease this pain. AR 58. Her headaches are also accompanied by sharp pains all over her body, and sometimes Plaintiff experiences tightness in her chest that can last for hours. AR 59.

Plaintiff also testified that at age 19, she was diagnosed with melanoma, which required her to have 11 surgeries over a span of 13 months AR 58-59. Plaintiff's recovery from surgery is slow because her pain medications are ineffective. AR 60-61. She testified that another surgery was planned but not yet scheduled. AR 50-61, 64.

When asked about her cognitive abilities, Plaintiff testified that she has a poor memory. She forgets things like what she did the day before or the PIN number for her bank card. AR 61. Furthermore, she stated that her sleep patterns are sporadic, and that she frequently takes long naps during the day. AR 62.

Thereafter, the ALJ asked vocational expert ("VE") Judith Najarian hypothetical questions based upon the medical record and the ALJ's subsequent RFC finding. AR 65-67. After asking the VE to contemplate an individual of the same age, education, and work background as Plaintiff, the VE determined that Plaintiff could perform work as it exists in the national economy. AR 65-67.[4]

**Medical Record**

The entire medical record was reviewed by the Court. AR 300-1074. The relevant medical evidence is referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled. AR 21-31. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 27, 2013, the date of her application. AR 23. Further, the ALJ identified traumatic brain injury/post-concussive syndrome with secondary pituitary dysfunction and migraine headaches as severe impairments. AR 23-25. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 25.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for eight-hours per eight-hour workday, and sit for six hours per eight-

---

[4] Plaintiff does not challenge the sufficiency of the hypothetical questions posed to the vocational expert.

4

hour workday, all with normal breaks. However, Plaintiff should avoid exposure to hazards such as unprotected heights and unstable moving machinery. AR 25-30.

The ALJ found that with Plaintiff's age, education (at least a high school diploma), work experience, and residual functional capacity that there were jobs existing in significant numbers in the national economy that she could perform. AR 30. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from April 10, 2010, through the date of decision. AR 31.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[5]

### 1. The ALJ Properly Discounted the Lay Testimony

In her first issue, Plaintiff argues that the ALJ erred by rejecting the lay witness testimony offered by her hiking partners, Cathe Neuberger and Damon Nugio. (Doc. 20 at 10-11).

#### A.  Cathe Neuberger

In a third party statement, Cathe Neuberger describes her observations of a seizure episode Plaintiff experienced while hiking on an unspecified date. AR 289. According to Ms. Neuberger, prior to Plaintiff's seizure she noticed that Plaintiff's eyes became unfocused, she needed to concentrate in order to complete basic tasks, and she was limiting her water intake. AR 289. During the seizure, Plaintiff suffered multiple symptoms including: loss of consciousness, jerking, muscle tightness, clenched teeth, rapid eye movement, and irregular breathing. AR 289. After Plaintiff's seizure, Ms. Neuberger stated that Plaintiff was disoriented, unable to speak or walk on her own, and that Plaintiff was extremely weak. After a day of rest, Plaintiff returned to "normal." AR 289-29.

#### B.  Damon Nugio

Damon Nugio also submitted an eye witness account of Plaintiff's seizures while hiking. AR 292. Mr. Nugio stated that on the hike, Plaintiff was not feeling well and not very talkative. AR 292. While hiking, Plaintiff was unable to maintain her balance, and she eventually fell to the ground. AR 292. Plaintiff's eyes were twitching rapidly back and forth, rolled into the back of her head, and then Plaintiff went limp. AR 292. After collapsing, Mr. Nugio and others monitored Plaintiff for several hours. At times, Plaintiff's breathing was normal but at other times she stopped breathing; there was a repeated cycle of rapid eye movement coupled with Plaintiff going limp. AR 292. Eight hours later, Plaintiff was moved to a tent. The entire episode lasted for twenty hours until Plaintiff could walk half

---

[5]  The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

a mile at a time until she reached a health clinic where she spent an entire evening and the following day recovering. AR 292.

### C. Legal Standard

An ALJ must take into account competent lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citation omitted). A lay witness can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis,* 236 F.3d at 511; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512. Further, "inconsistency with medical evidence is another such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

### D. Analysis

Here, the ALJ considered the lay witness testimony of both Ms. Neuberger and Mr. Nugio and found that these third-party statements were not supported by the objective medical evidence. AR 29. The ALJ noted that while the third-party statements outlined Plaintiff's seizure episodes, the objective medical evidence demonstrated that Plaintiff's seizures have been ruled out as a condition causing more than minimal limitations in Plaintiff's ability to perform basic work activities for a period of twelve months. AR 23, 29. This is a germane reason to reject the third-party statements. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (an ALJ may discount lay testimony that conflicts with the medical evidence); *Bayliss*, 427 F.3d at 1218 (inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay witness).

As discussed by the ALJ, in July 2014, Plaintiff reported having seizures. AR 28. At that time Plaintiff was on a "five-month" cross-country hike where she was hiking twenty to thirty miles per day. AR 28, 55, 549. She was also doing research, writing a hiking guidebook, and going to college. AR 28. Despite her complaints of intermittent seizures, testing revealed that Plaintiff's physical and

neurological examinations were within normal limits. AR 549-553. Doctors later suggested that Plaintiff begin a growth hormone therapy treatment, which in March 2015, Plaintiff reported had improved her energy and overall been a "life-changing intervention markedly improving her quality of life." AR 28. In viewing the totality of this evidence,--Plaintiff's marked improvement and the lack of clinical evidence to support more than minimal limitations from her seizures—the ALJ ultimately concluded that the undated third-party reports had little probative value because they were inconsistent with the medical evidence demonstrating that Plaintiff's seizures were eliminated as causing more than a minimal limitation. AR 23, 29. Therefore, based on the objective medical evidence the ALJ provided a proper reason to reject the statements of Mr. Nugio and Ms. Neuberger when determining Plaintiff's RFC. *Bayliss*, 427 F.3d at 1218 ("An ALJ need only give germane reasons for discrediting the testimony of lay witness").

Moreover, because the third-party statements of Ms. Neuberger and Mr. Nugio were of the same general nature as Plaintiff's subjective complaints, the ALJ's other valid reasons for discounting Plaintiff's statements apply equally to Ms. Neuberger and Mr. Nugio's similar statements. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Like the statements by Ms. Neuberger and Mr. Nugio, Plaintiff also testified that her seizure episodes resulted in decreased communication and cognition, impaired vision, nausea, vomiting, dizziness, slurred speech and trouble standing. AR 29. In evaluating Plaintiff's credibility, the ALJ discounted Plaintiff's subjective symptoms for several reasons including that her GH therapy significantly improved her condition, her neurological examinations were within normal limits, and her overall strenuous activity level did not support her allegations of disability; determinations which Plaintiff does not challenge. AR 29. Accordingly, to the extent that Ms. Neuberger and Mr. Nugio's statements closely mirrored Plaintiff's subjective complaints, the Court finds that the ALJ's legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony also constituted a legally sufficient reason for rejecting the lay witness statements. *See Molina*, 674 F.3d at 1122 (even where

ALJ completely failed to discuss lay witness testimony, "given that the lay witness testimony described the same limitations as Molina's own testimony, ... the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony").

Accordingly, the ALJ properly rejected the lay witness testimony.

**2. Newly Submitted Evidence**

Next, Plaintiff submits new evidence in her opening brief that she contends warrants a remand for further administrative proceedings. With respect to this second issue, Plaintiff attaches a letter from her obstetrics and gynecology physician Amanda Devine Reeve, M.D. which provides an additional eyewitness account of Plaintiff's seizure disorder. (Doc. 20, Ex.1). In a one paragraph letter, Dr. Reeve states that "last year," she treated Plaintiff while she was in the recovery room from an unrelated laparoscopic procedure. While recovering, Plaintiff began to have seizures that continued for five consecutive days. (Doc. 20, Ex. 1). Dr. Reeve ultimately transferred Plaintiff to the University of California San Francisco Neurology Intensive Care Unit. Based on this new evidence, Plaintiff asks the Court to remand this case to the ALJ for further consideration.

**A. Legal Standard**

If a plaintiff desires the Court to consider "new evidence" that is not part of the record when the plaintiff files the Complaint, the Court shall apply sentence six of 42 U.S.C. § 405(g) to determine if it has jurisdiction to review the new evidence. Sentence Six of 42 U.S.C. § 405(g) authorizes a reviewing court to remand a case to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Notably, "[a] claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied. To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) (*citing Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)).

**B. Analysis**

Here, Plaintiff has failed to address whether there is good cause for her failure to present this new evidence during the administrative proceedings. While Dr. Reeve's letter is dated November 16,

2016, she specifically refers to observing Plaintiff's seizure events "last year"—i.e. 2015. After the ALJ issued her decision on August 25, 2015, followed by an extension of time by the Appeals Council, Plaintiff had until November 28, 2015, to submit any additional new and material evidence concerning her case. AR 7. However, for an unknown reason, Dr. Reeve's observations, occurring sometime in 2015, were not timely submitted to the Appeals Council and Plaintiff has not put forth any reason why she could not have provided Dr. Reeve's observations to the ALJ.

Plaintiff has also failed to clarify the date in which Dr. Reeve's observations and her related hospitalization took place. This failure prevents the Court from determining whether the evidence is material to her condition during the disability period. There are two logical explanations for why Plaintiff provides only vague details about when her hospitalization occurred, either (a) Dr. Reeve's observations took place sometime before the close of the administrative period making this evidence untimely or (b) Dr. Reeve's observations support a worsening of Plaintiff's condition after the decision issued in this action, for which Plaintiff would be required to file a new claim for benefits. *See Valenzuela v. Commr. of Soc. Sec.*, 1:15-CV-00291-SAB, 2016 WL 3569722 (E.D. Cal. June 30, 2016) (evidence of a worsening condition after the ALJ's decision should be submitted in a new claim for benefits).

Perhaps because Plaintiff does not want to reveal the timeline of her five-day hospital stay, she does not present any related treatment records documenting her hospitalization nor does she submit evidence supporting her referral by Dr. Reeve to the UCSF Intensive Care Unit. Additionally, although Dr. Reeve claims that Plaintiff continues to experience 10-15 seizures per month, Plaintiff also fails to submit any new evidence of those seizures as well.

"Under 42 U.S.C. § 405(g), in determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes*, 276 F.3d at 461–62 (emphasis added). Because Plaintiff has not established good cause for failing to submit the new evidence during the administrative proceedings, the question of the materiality is moot. *See Sanchez v. Sec. of Health and Human Servs.*, 812 F.2d 509, 512 (9th Cir. 1987) (holding that the applicant lacked good cause to remand for consideration of two psychological

10

examinations prepared after the applicant's disability determination when the attorney knew of the applicant's memory loss but failed to explain why the applicant had not requested a mental evaluation or pressed his mental impairment claim at the hearing before ALJ).

Accordingly, a remand or reversal is not warranted on this issue.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Sara Christine Fry.

IT IS SO ORDERED.

Dated: **July 24, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE